OPINION
{¶ 1} Richard Scott appeals from his conviction and sentence in Montgomery County Common Pleas Court on one count of gross sexual imposition.
 {¶ 2} Scott advances three assignments of error on appeal. First, he contends the trial court erred in denying his request to have a "police interrogation CD" admitted into evidence for use by the jury during its deliberations. Second, he claims the trial court erred in denying him the opportunity to cross-examine a detective about his willingness to take a polygraph examination. Third, he argues that his conviction is against the manifest weight of the evidence.
 {¶ 3} The present appeal stems from Scott's alleged assault on a woman named N.K. while she was working alone in an area bar known as the Orbit Inn. N.K. was acquainted with Scott because he had been a customer for some time. According to N.K., Scott entered the bar on March 19, 2005, grabbed her ponytail, pinned her against a wall and held her by the throat while trying to pry her legs apart. He also placed his hand inside her shirt and tried to reach down her pants. While Scott was attempting to put his hand down N.K.'s pants, she heard him remark about "get[ting] a little piece." N.K. also heard Scott direct an unidentified male companion to lock the door and turn up the jukebox. Before Scott's companion could lock the door, however, a group of people entered the bar. Scott then released N.K. and followed his companion out of the bar.
 {¶ 4} N.K. contacted police three days after the incident and spoke to Riverside officer Angela Jackson, who observed scratches and bruising on N.K.'s neck. Riverside detective David Crigler then interviewed Scott. After waiving his Miranda rights, Scott initially insisted that he had not visited the Orbit Inn on the day in question. He then stated that he had driven through the bar's parking lot. Finally, he admitted that he may have entered the bar but denied any recollection of assaulting N.K.
 {¶ 5} After hearing the foregoing evidence, a jury acquitted Scott of attempted rape but found him guilty of gross sexual imposition, a fourth-degree felony. The trial court sentenced him to one year in prison to be served consecutively to the sentence imposed in another case. This timely appeal followed.
 {¶ 6} In his first assignment of error, Scott contends the trial court erred in denying his request to have a "police interrogation CD" admitted into evidence for use by the jury during its deliberations. This assignment of error concerns a CD-ROM recording of detective Crigler's interview with Scott. At trial, the prosecution played portions of the recording for the jury in the course of questioning Crigler. Scott sought to have the entire recording placed before the jury pursuant to Evid.R. 106. The trial court held that Scott could cross-examine detective Crigler by playing other parts of the recording but declined to admit the entire recording into evidence.
 {¶ 7} On appeal, Scott argues that "[t]he state did not show to the court any single statement which would have been inadmissible." He also asserts that "[l]acking any offer of proof to show inadmissible statements, the [t]rial [c]ourt should have admitted the complete CD to prevent prejudice" to him. Scott made the same argument at trial, contending that the prosecution bore the "burden to show * * * what portion of that statement is inadmissable in order to prevent the entire statement from going before the jury." (Trial Tr., Vol. II at 139).
 {¶ 8} Upon review, we find no merit in Scott's argument that the trial court misallocated the burden of proving admissibility. Evidence Rule 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him to introduce any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it."
 {¶ 9} Under Evid.R. 106, the adverse party has the burden of showing that the additional part of a writing or recorded statement is admissible. State v. Holmes (1991),77 Ohio App.3d 582, 585; State v. Williams (1996), 115 Ohio App.3d 24, 41. Here that party was Scott. Therefore, we reject his argument that the entire CD-ROM was admissible simply because the State failed to prove otherwise. We note too that Scott makes no attempt on appeal to demonstrate the admissibility of the entire recording. Finally, we note that Scott never used any portion of the recording to cross-examine Crigler — as the trial court authorized him to do — despite his assertion that the detective's testimony and review took his statements out of context.[1]
We find no abuse of discretion in the trial court's exclusion of the full recording from evidence. Scott's first assignment of error is overruled.
 {¶ 10} In his second assignment of error, Scott claims the trial court erred by denying him the opportunity to cross-examine detective Crigler about his willingness to take a polygraph examination. Although Scott never actually took a polygraph test, he argues that his willingness to do so is relevant to the issue of his innocence. Because polygraph test results themselves now may be admissible if the parties agree and if other conditions are met, State v. Souel (1978), 53 Ohio St.2d 123, Scott contends his willingness to take the test likewise should be admissible. In support, he cites our opinions in State v.Ballard (Nov. 22, 1996), Montgomery App. No. 15410, and Statev. Perry (Nov. 25, 1998), Miami App. Nos. 97CA61 and 98CA5.
 {¶ 11} In Ballard, we held that the trial court did not err in denying a mistrial where a prosecution witness who was a co-defendant testified that his plea agreement required him to take a polygraph test if necessary. Likewise, we held in Perry
that the trial court did not err in denying a mistrial where a prosecution witness testified that the defendant had asked to take a polygraph test. In both cases, we noted the existence of conflicting case law as to whether evidence of a willingness or refusal to submit to a polygraph test is admissible. We also expressed our view that a trial court's admission of evidence about a witness' willingness to take a polygraph test was permissible and did not constitute an abuse of discretion.
 {¶ 12} It does not follow, however, that the trial court was required to admit evidence of Scott's willingness to take a polygraph test merely because the admission of such evidence may not constitute an abuse of discretion. To the contrary, a trial court also has the discretion to deny the admission of evidence concerning the willingness to take a polygraph test. As we recognized in Perry, the admission of such evidence necessarily invites a jury to speculate about whether a test was taken and what the results were. Such issues are "too remote from competent evidence to reasonably and fairly be probative of guilt or innocence." Perry, supra, at *7.
 {¶ 13} In State v. Jackson (1991), 57 Ohio St.3d 29, the Ohio Supreme Court addressed an argument virtually identical to the one now before us. There the defendant claimed the trial court had erred in refusing to allow him to cross-examine the interrogating officer about his willingness to take a polygraph test. The Jackson court rejected this argument, reasoning: "The subject of polygraph examinations is complex, confusing to the jury, and not relevant to the issues at trial. Even if Jackson had successfully taken a polygraph examination, the trial court could refuse to admit this evidence. Although polygraph examination results may be admitted for corroboration or impeachment, the parties must first jointly stipulate admissibility and follow certain explicit conditions. If polygraph examination results were not admissible, the trial judge had no reason to allow Jackson's asserted offer into evidence." Id. at 363-7 (citations omitted).
 {¶ 14} The same reasoning applies in the present case. In light of Jackson, we cannot say the trial court abused its discretion by denying Scott the opportunity to cross-examine detective Crigler about his willingness to take a polygraph examination. See also State v. Byrd, Lorain App. No. 03CA008230, 2003-Ohio-7168, ¶ 33 ("It was within the sound discretion of the trial court to exclude Appellant's statements regarding his willingness to take a polygraph examination.");State v. Blasdell, 155 Ohio App.3d 423, 430-431, 2003-Ohio-6392
("[T]he trial court did not abuse its discretion in refusing to admit evidence of appellant's willingness to take a polygraph test."). Scott's second assignment of error is overruled.
 {¶ 15} In his third assignment of error, Scott argues that his gross sexual imposition conviction is against the manifest weight of the evidence. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 16} In the present case, the evidence does not weigh heavily against Scott's conviction. Scott suggests that N.K.'s allegations lack credibility because she waited three days to contact police. He also notes a discrepancy about how many people were in the group that entered the bar during the assault. In addition, he points out that police were unable to locate any of the customers and that N.K.'s boyfriend never testified to confirm her claim that she had spoken to him after the incident. Scott also stresses his presentation of three witnesses who testified negatively about N.K.'s reputation for truthfulness. Finally, he asserts that N.K.'s version of events was physically impossible because he could not have held her hair and neck while simultaneously reaching down her shirt and between her legs.
 {¶ 17} The foregoing arguments fail to persuade us that Scott's conviction is against the weight of the evidence. N.K. explained that she had waited three days to contact police because Scott had threatened her. She also testified that Scott had grabbed her by the ponytail, pinned her against a wall and held her by the throat while trying to pry her legs apart. He also placed his hand inside her shirt and tried to reach down her pants. Given the sudden and violent nature of the attack, the fact that N.K. could not recall or explain exactly how Scott had moved his hands from one location to another did not render her version of events an impossibility.
 {¶ 18} As for the number of individuals who entered the bar during the incident, the minor discrepancy cited by Scott concerns whether it was two people or four. N.K. testified that four people interrupted the attack but admitted possibly telling officer Jackson that it had been "a couple" of people. It also is true that police never located any of the individuals who interrupted the assault, that N.K.'s boyfriend did not testify, and that Scott presented three witnesses who testified about her reputation for truthfulness. The jury was free to consider these issues and give them whatever weight it deemed appropriate. Based on our review of the entire record, however, we cannot say that the jury's guilty verdict on the gross sexual imposition charge is against the manifest weight of the evidence.
 {¶ 19} N.K. testified that Scott had assaulted her, and the record reveals a possible motive for his conduct. We note too that N.K. had scratches and bruising on her neck and she produced a broken neckless and a torn shirt. Finally, detective Crigler's testimony about Scott's vague and changing statements tends to call into doubt Scott's veracity. Having reviewed the entire record, weighed the evidence and all reasonable inferences, and considered witness credibility, we do not find that, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. As a result, we overrule Scott's third assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
Donovan, J., and Walters, J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] Parenthetically, it is not apparent to us that the unplayed portions of the recording necessarily ought in fairness to have been considered along with the parts played by the prosecution, even if they were otherwise admissible. The parts of the recording reviewed in court by detective Crigler consisted of more than just incriminating statements. Crigler also reviewed and testified about Scott's claims that he had not been at the bar, that he only had driven through the parking lot, and that he may have gone inside but had no recollection of attacking N.K.