[Cite as *State v. Koss*, 2014-Ohio-5042.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 13AP-970 |
| v. | : | (M.C. No. 2013 TRC 146170) |
| Burton M. Koss, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 13, 2014

*Richard C. Pfeiffer*, *Jr.*, City Attorney, and *Melanie R. Tobias*, for appellee.

*Yeura R. Venters*, Public Defender, and *John W. Keeling*, for appellant.

APPEAL from the Franklin County Municipal Court

SADLER, P.J.

{¶ 1} Defendant-appellant, Burton M. Koss, appeals from a judgment of the Franklin County Municipal Court in which he was convicted of operating a vehicle under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a), and parking on a highway, in violation of R.C. 4511.66. For the reasons that follow, the judgment of the trial court is affirmed in part and reversed in part.

I. BACKGROUND

{¶ 2} The charges herein arose on June 7, 2013. The following was adduced at trial where appellant waived his right to counsel and proceeded pro se. On June 7, 2013, at approximately 1:50 a.m., Ohio State Patrol Trooper Heath Strawser was on patrol and

traveling south on Interstate 71 when he noticed a vehicle on the berm with its flashing lights activated. To assess the situation, Trooper Strawser parked behind the vehicle. As Trooper Strawser approached the vehicle, he noticed that the engine was running, the vehicle was in park, and appellant was seated in the driver's seat with the seat laid back. According to Trooper Strawser, he knocked on the driver's side window multiple times in approximately five separate intervals, and appellant "did look up from lying back in his seat, and he did make eye contact with me. And then he laid back down and passed out again." (Trial Tr. 64.) Trooper Strawser knocked again, and appellant put down the window. Trooper Strawser asked appellant if everything was okay, and appellant responded yes and that "he was looking for his exit." (Trial Tr. 105.) Trooper Strawser testified that he noticed "a strong odor of alcohol" and that appellant's eyes were "red, bloodshot, glassy, [and] watery," which led Trooper Strawser to believe that appellant had been consuming alcohol and was possibly impaired. (Trial Tr. 64-65.) Therefore, Trooper Strawser asked appellant to exit the vehicle and field sobriety tests were conducted.

{¶ 3} Trooper Strawser first conducted the horizontal gaze nystagmus test, which tests for nystagmus or involuntary jerking of the eyes. According to Trooper Strawser, appellant exhibited six out of six clues in completing this test. Trooper Strawser next conducted the vertical gaze nystagmus test, but "[t]hat was not present in this matter." (Trial Tr. 72.) Trooper Strawser attempted to conduct the "walk-and-turn" test, but appellant refused to complete it and, instead, stopped the test and told Trooper Strawser that he did not understand why he had to do this. (Trial Tr. 72.) Trooper Strawser explained his reasoning and then proceeded to conduct the final field sobriety test, the "one-leg stand" test. (Trial Tr. 74.) This test requires a person to stand on one leg for approximately 30 seconds until told to stop. According to Trooper Strawser, in completing this test, appellant exhibited three out of four clues.

{¶ 4} At the conclusion of the field sobriety tests, Trooper Strawser arrested appellant and charged him with OVI and parking on a highway. Appellant was asked, but refused, to submit to a urine test.

{¶ 5} During appellant's case-in-chief, appellant first called Franklin County Deputy John Young who was at the jail where appellant was taken after his arrest. Deputy

Young testified that he did not see any signs of intoxication or impairment, but he could not recall whether there was an odor of alcohol about appellant or not.

{¶ 6}  Appellant then testified on his own behalf.  According to appellant, he met his father at a restaurant, The Old Bag of Nails, at 8:00 or 8:30 p.m. on June 6 where he had "a full meal" and "one beer."  (Trial Tr. 236, 239.)  Appellant and his father stayed at the restaurant until "maybe somewhere between 10:30 and 11:00" p.m.  (Trial Tr. 239.)  According to appellant, he drove his father home and then proceeded to a bar, Leipzig Haus, near his father's home.  While at the bar, appellant had "two beers, over the course of approximately an hour and a half."  (Trial Tr. 236.)  Appellant testified:

> I left the bar somewhere between 1:00 a.m. and 1:30.  And while driving home, I began to feel very tired and decided to stop driving because I was very tired.  And I pulled the car off the road, put it in park, put the four-way flashers on, titled the seat back a little bit, left the engine running because it was very warm and I wanted the air-conditioning, and I fell asleep. And I was awakened by a knock on the window by Trooper Strawser.

(Trial Tr. 236.)

{¶ 7}  Additionally, appellant testified that, though he felt tired, "[w]hile driving, I did not feel at all intoxicated.  I only felt a very mild effect of alcoholic beverages after stopping the car when I was interviewed and detained and then arrested by Trooper Strawser."  (Trial Tr. 237.)

{¶ 8}  The jury found appellant guilty of the OVI charge, and the trial court found appellant guilty of parking on a highway.  On the OVI charge, appellant was sentenced to 90 days with 1 day being credited and 83 days being suspended on the condition of 6 months community control.  Further, appellant was ordered to spend three days in jail and to complete a three-day alcohol education program.  Additionally, the trial court imposed a $375 fine, court costs of $1,437, and a 180-day driving suspension.  For the parking on a highway conviction, the trial court imposed a $100 fine with $50 suspended for time served.  Appellant filed a motion for new trial and motion for arrest of judgment, which were denied by the trial court.

## II. ASSIGNMENTS OF ERROR

{¶ 9} This appeal followed, and appellant brings the following assignments of error for our review:

> [I.] The trial court erred when it deprived the defendant of his constitutional right to a fair trial, the constitutional right to present a defense, and the constitutional right to confront evidence when it: (1) prevented the defendant from introducing relevant scientific facts relating to blood-alcohol absorption rates, (2) prevented the defendant from introducing portions of the cruiser video that supported his defense, (3) prevented the defendant from testifying with respect to anything he or the trooper said during the entire incident, and when it (4) prevented the defendant from asking leading questions during his examination of the state's only witness.
>
> [II.] The trial court erred when it overruled the defendant's motion to suppress evidence.
>
> [III.] The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain the convictions.
>
> [IV.] The trial court erred when it entered judgment against the defendant against the manifest weight of the evidence.

## III. DISCUSSION

### A. First Assignment of Error

{¶ 10} Specifically, under his first assignment of error, appellant argues the trial court erred in (1) prohibiting him from presenting the testimony of his expert witness, (2) prohibiting him from showing portions of a videotape depicting his behavior and demeanor at the time of his arrest, (3) denying him an opportunity to testify with respect to anything said during the course of the incident, and (4) prohibiting him from asking leading questions during his cross-examination of Trooper Strawser.

### 1. Expert Testimony

{¶ 11} Prior to trial, appellant provided the state with two expert reports prepared by Alfred E. Staubus, Pharm.D., and notified the state of his intent to call Staubus as an expert witness at trial. The state filed a motion in limine requesting an order that

prohibited use of the reports and the opinions rendered therein. According to the state's motion, the reports were not admissible under Evid.R. 702 due to their lack of evidentiary support and relevancy. A hearing on the motion was conducted, and at the conclusion of the hearing, the trial court held Staubus would not be permitted to testify regarding either of the two reports submitted by appellant. Though the motion in limine and the trial court's ruling concerned two reports, on appeal, appellant challenges the admissibility of only one and the remainder of our discussion focuses likewise.

{¶ 12} In his report, Staubus indicated the following:

> 1) Hypothetical situation: Mr. Koss may have consumed some alcoholic beverages during the evening hours of June 6, 2013, and/or the early morning hours of June 7, 2013. Following the end of the hypothetical drinking period, Mr. Koss started to drive home. However, because he was hypothetically starting to feel the effects of the alcohol, he prudently decided to pull off the road and park his vehicle on the west berm of Interstate Route 71 South between Frank Road and Interstate Route 270. Mr. Koss turned on his flashing lights to avoid any other vehicle hitting his vehicle and went to sleep to allow the alcohol to dissipate from his body.
>
> 2) Sometime after having pulled over and parked his vehicle, Trooper H.G. Strawser from the Circleville Highway Patrol Post came upon Mr. Koss' vehicle and tapped on the driver's side door window to awaken Mr. Koss. Trooper Strawser had Mr. Koss perform the Standardized Field Sobriety Tests (SFSTs) which Mr. Koss reportedly failed.
>
> 3) Trooper Strawser placed Mr. Koss under arrest at 2:06 a.m. on June 7, 2013, read him his rights, and transported him to the Franklin County Jail where Mr. Koss allegedly refused a urine test.

(Report, 1.)

{¶ 13} According to Staubus's report, "[a]t the end of drinking, a person is not at their peak blood-alcohol concentration," as alcohol will "still be in the stomach and small intestines." (Report, 1-2.) The report described how alcohol in the stomach and small intestines will continue to be absorbed "for a period of time ranging from about 15 minutes to 2 hours or longer depending upon food consumption." (Report, 2.) "As the result of the prolonged absorption of alcohol, the blood-alcohol level, and consequently,

the degree of alcohol influence will increase with time after the end of the last drink." (Report, 2.)  The report also states that "depending upon the amount of food and alcohol consumed, the time period of drinking, and the time period after the end of drinking, a person could go from the early stages of alcohol influence to the higher stages of alcohol influence associated with alcohol impairment/intoxication."  (Report, 2.)  Thus, in the report, Staubus concludes that Trooper Strawser's evaluation of appellant's degree of impairment may have been accurate at the time of their encounter, but it may not have been accurate at the time appellant decided to pull over and park his vehicle.  The report concludes as follows:

> In summary, it is my opinion to a reasonable degree of medical and scientific certainty that assuming this hypothetical situation, Mr. Koss' blood-alcohol concentration and degree of alcohol influence at the time of driving may have been below a level that would have affected him so as to impair, to a noticeable degree, his ability to operate a motor vehicle.

(Report, 2.)

{¶ 14} In the pretrial decision to exclude Staubus's testimony, the trial court concluded the report was devoid of any specific information, i.e., the amount of food, if any, consumed, the amount of alcohol consumed, and the time periods during and after drinking that would allow Staubus to render an expert opinion about appellant's alcohol level and degree of impairment at the times relevant in this case.  At the conclusion of his testimony, appellant proffered Staubus's report.

{¶ 15} On appeal, appellant contends the trial court erred in excluding Staubus's report because it was "important evidence" that would allow the jury to believe appellant when he testified that he did not feel impaired from the effects of alcohol when he pulled over.  (Appellant's Brief, 17.)  According to appellant, prohibiting the testimony of Staubus violated his constitutional right to present a defense.

{¶ 16} A trial court's ruling as to the admission or exclusion of expert testimony is within its broad discretion and will not be disturbed absent an abuse of discretion.  *State v. Tomlin*, 63 Ohio St.3d 724, 728 (1992).  An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily

or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id.*

{¶ 17} Appellant contends it was error to prohibit Staubus's report from coming into evidence because Staubus did not render an opinion as to whether or not appellant was impaired when he was operating his motor vehicle, but, rather, only stated scientific facts regarding alcohol absorption rates. Contrary to this assertion, at the hearing on the motion in limine, the parties and the trial court discussed the issue as one regarding whether Staubus's report contained sufficient information from which he could render an expert opinion with respect to what happened in appellant's case in terms of *appellant's* body's processing of alcohol. Because there was no evidence as to the amount of alcohol consumed, the time over which alcohol was consumed, appellant's body mass, the amount of food consumption or any other facts which could allow Staubus to render an opinion as to appellant's alcohol absorption rates and hypothetical blood alcohol concentration at the times in question, the trial court granted the state's motion in limine.

{¶ 18} Upon review of this issue, we are unable to find that the trial court abused its discretion. " '[E]very opinion, whether by an expert or lay person, must have a proper foundation [the factual basis of the conclusion] to be admissible.' " *Shivers v. Univ. of Cincinnati*, 10th Dist. No. 02AP-395, 2002-Ohio-6633, ¶ 12, quoting *State v. President*, 9th Dist. No. 92CA005408 (Apr. 21, 1993). Although the parties do not dispute that Staubus qualified as an expert, his proposed testimony did not comply with the requirements of Evid.R. 703, which provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." " 'This evidentiary principle has been refined and interpreted by Ohio courts to mean that the requirements of Evid.R. 703 are met if an expert's opinion is based in whole, *or in major part*, upon data which he has perceived and which has been admitted into evidence in the case.' " (Emphasis sic.) *Id.* at ¶ 14, quoting *Harmon v. Allen*, 8th Dist. No. 78349 (Aug. 23, 2001).

{¶ 19} Because Staubus's report failed to indicate the amount of alcohol appellant consumed, the amount of food, if any, that appellant consumed, the relevant time frames of such food and alcohol consumption, and appellant's body mass, appellant failed to

establish a proper foundation for admitting Staubus's expert opinion pursuant to Evid.R. 703 and 705. *State v. Simpson*, 11th Dist. No. 93-L-014 (Sept. 30, 1994) ("to be admissible as opinion testimony of an expert witness, Evid.R. 703 and 705 require that a proper foundation be laid and the opinion must have the proper evidentiary basis"). Accordingly, the trial court did not abuse its discretion in excluding Staubus's testimony for lack of a proper foundation.

### 2. Videotape of Arrest

{¶ 20} Also under his first assignment of error, appellant challenges the trial court's decision that overruled appellant's request to have the entire cruiser video admitted into evidence. Specifically, appellant asserts the jury should have been permitted to see the entire video taken from the cruiser's dashboard, including the portion that depicted appellant being transported to jail. It is appellant's position that this portion of the video would have bolstered his assertion that he was not impaired during the events in question.

{¶ 21} In the course of the state's case-in-chief, the state introduced and used portions of the cruiser video during Trooper Strawser's testimony. Specifically, the state played the portion of the video depicting the events that occurred from the time Trooper Strawser approached appellant's vehicle up until the time of appellant's arrest. However, the state did not question Trooper Strawser about the portion of the video depicting appellant's transport to jail, nor did appellant question Trooper Strawser regarding the same during cross-examination.

{¶ 22} After the state rested subject to admission of its two exhibits, one of which was the video, appellant inquired as to whether the jury would be given the entire video with the opportunity to watch the portions that were not played in court. The state asked that it have time to review the remainder of the video to ensure there was nothing objectionable thereon. At that time, the trial court stated that it would reserve ruling on what portions of the video would be admitted into evidence.

{¶ 23} The case proceeded and, at the conclusion of Deputy Young's testimony, appellant inquired again as to whether all or only part of the dashboard video would be admitted into evidence. The trial court stated, "the easy answer is everything that Trooper Strawser testified about and where it stopped clearly is admitted, clearly is admitted."

(Trial Tr. 149.)  The trial court went on to state, "I hesitate to give them a lot of video that was never testified about, that was never part of the evidence in trial.  It seems to me that becomes really beyond the scope of what they should be able to see."  (Trial Tr. 149.)

{¶ 24} The trial court then instructed appellant that, if he testified about the video, he could show any portion of the video to the jury.  The following exchange occurred:

> THE COURT: Oh, yeah.  It's admitted, you know, along with your testimony, you can show it to the jury; you can testify about it; you can do the kind of stop; start action that we had with Trooper Strawser.
>
> [APPELLANT]: That may not be necessary, but I'll make a decision tonight.
>
> THE COURT: Yeah.  Okay.  But you can't just play it without you testifying.  There is no mechanism to bring that additional, you know, edited part of the tape in without a witness that has knowledge of it.

(Trial Tr. 150-51.)

{¶ 25} Thereafter, it was discussed again:

> THE COURT: Okay. 5:10, anything further?  I will expect, you know, strong suggestions about an agreement about how far the tape goes.  You've got me totally embracing everything that was shown to the jury.  Beyond that, I'll accept things that are agreeable between the two of you, but, please, not 55 minutes.  I mean, that just is not fair, and it's not fair to give that to them when they haven't seen that, nor is it going to be easy to properly edit that. * * *
>
> [APPELLANT]: So Your Honor is saying that some portion of it beyond the point where it was stopped during the prosecution's case might be admitted based on agreement; and at least in theory if I testify, theoretically all of it could come in if there is a reason for it.
>
> THE COURT: Oh, sure, if you use it.  If you testify and you use it in a way that Trooper Strawser testified about it, you know, it's already in evidence, and I think anything that's shown to the jury is subject to cross and subject to your direct, probably does come in without editing.

(Trial Tr. 154-55.)

{¶ 26} The following morning, the issue was raised again, and the trial court stated:

> Mr. Koss, if you testify and you use the video including the dead air space that you're going to fast-forward through and get to the talking points that you have just expressed, the bond conversation, the towing of the vehicle converstation, and use that in your direct testimony, or if it's used in cross, then I agree that my ruling will be different, and it should–probably will be entirely admitted with those instructions.
>
> Those are sensible instructions for the whole tape. But without further testimony from you or from another witness– I mean, if you would call Trooper Strawser in your case-in-chief–and use that extra part of the tape, of course, that would change my ruling. * * *
>
> * * *
>
> And because you want to use it to say, this is a person who's sober, who's thoughtful, who's going through, you know, the process of dealing with what's coming up, that's an open question that you can use in your case-in-chief. But you can't use it without some use being made in the other part of the case.

(Trial Tr. 166-68.)

{¶ 27} The court also stated, "[a]nd as I hope I said as clearly as I can, use of the document–A proper use of the DVD in your case-in-chief changes everything. You could show that to the jury. It would be live, part of the admitted evidence, testimony about that. And you could also use arguments about why they should look at this, listen to the sound of your voice, listen to the questions you're asking." (Trial Tr. 169.)

{¶ 28} Thereafter, appellant testified in his direct examination that "[w]hat happened after Trooper Strawser knocked on the window has been preserved on video. That has already been played in court, and the defendant has no further testimony at this time." (Trial Tr. 236.)

{¶ 29} During his cross-examination, appellant testified that he remembered where he parked on the night of the incident. In an effort to impeach appellant and demonstrate that on the night in question appellant did not recall where his car was, the

state attempted to play a portion of the video that had not been previously played during Trooper Strawer's testimony. Appellant objected to the video being played for the jury. The court allowed that portion of the video to be played and stated "I don't want to say that the entire part of the video has been admitted. Now it may—this part used may be admitted as well, if either side decides to use that, and they may not want to admit it, but I'll let it be used." (Trial Tr. 247.)

{¶ 30} Prior to appellant's redirect examination, appellant indicated in a side-bar conference that he was "prepared to testify" that he had "significant dialogue" with Trooper Strawser in the car "that was much more than what was just played." (Trial Tr. 252.) The trial court stated, "[w]ell, you know, you can make a decision, and you can try to play it. I don't remember, but remember, it's got to be in the scope of the cross-examination. You can't introduce a new subject. * * * But if you think there are things on that video that you want the jury to hear that's in the scope of the subjects asked in cross, this would be your time to use them." (Trial Tr. 252-53.) The trial court also instructed appellant, "[n]ow, remember, you can testify without using the video about anything that's arguably in the scope of the cross-examination. So if you want to give testimony that you think falls into that category, I'm sure the prosecutors are going to object if they feel it's outside the scope. But if it is arguably in the scope, you can be allowed. This is your chance to do it." (Trial Tr. 253.)

{¶ 31} Appellant's redirect examination went as follows:

> [APPELLANT]: The question and answer about the location of my car is a small portion of a complete conversation that I had with Trooper Strawser while I was in the back of the patrol car being taken to the county jail. And I distinctly remember that throughout that conversation I asked him a number of very detailed questions about the processes at the county jail, whether I would be allowed to post my own bond using a credit card, whether I would be—whether I was going to recover my car key which Trooper Strawser had taken custody of. And he gave me information about those processes, and what I actually experienced at the county jail was rather different.
>
> But the detailed conversation that I had with Trooper Strawser in that car reveals that I had my wits about me and that I was not—

[PROSECUTOR]: Objection.  I don't think he can—

THE COURT:  Sustained.  I mean, that's not something real—that's not really testimony.  That may be argument later.  Go ahead with your testimony.

[APPELLANT]: Nothing further, Your Honor.

THE COURT: Okay.  Recross?

[PROSECUTOR]: No, thank you, Your Honor.

(Trial Tr. 253-54.)

{¶ 32} On appeal, appellant argues the entire video should have been admitted into evidence under Evid.R. 106, which provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction *at that time* of any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it." (Emphasis added.)  Evid.R. 106 allows the adverse party to immediately put the admitted statements into context by permitting the party to simultaneously admit the remainder of the writing or recording.  *State v. Arrington*, 12th Dist. No. CA2012-02-002, 2012-Ohio-5009, ¶ 11, citing *State v. Mathers*, 9th Dist. No. 07CA009242, 2008-Ohio-2902, ¶ 27.  The overriding purpose of the rule is to prevent one party from taking statements out of context and distorting them.  *Id.* at ¶ 11, citing *State v. Byrd*, 9th Dist. No. 03CA008230, 2003-Ohio-7168, ¶ 26.

{¶ 33} The adverse party is, however, not automatically entitled to have the entire writing or recorded statement introduced into evidence simply by requesting it.  *Id.* at ¶ 12, citing *State v. Williams*, 115 Ohio App.3d 24, 41 (11th Dist.1996).  Rather, the adverse party has the burden of showing that the additional part sought to be introduced is not only admissible, but also relevant to the portion that has already been introduced.  *Id.*, citing *State v. Holmes*, 77 Ohio App.3d 582, 585 (11th Dist.1991); *State v. Scott*, 2d Dist. No. 21260, 2006-Ohio-4016, ¶ 9.  Evid.R. 106 "contemplates a very high degree of discretion to be exercised by the trial judge."  *Arrington* at ¶12, quoting Weissenberger, *Weissenberger's Ohio Evidence Treatise*, Section 106.1, 49 (2011).

{¶ 34} Upon review of the record, we find no violation of Evid.R. 106. Said rule allows the adverse party to *immediately* put the admitted statements into context by permitting the party to simultaneously admit the remainder of the writing or recording. *Mathers* at ¶ 27. Evid.R. 106 is "a rule of timing which avoids the need for the adverse party to wait until later to place the writing or recording introduced into proper perspective through cross-examination or rebuttal evidence." *Arrington* at ¶ 13, quoting Evid.R. 106, Staff Notes. " 'Thus, the rule permits, but does not require, a party to take advantage of the procedural device afforded by the rule to place the opposing party's evidence in context immediately.' " *Id.*, quoting *State v. Oliver*, 8th Dist. No. 49613 (Oct. 17, 1985).

{¶ 35} Here, as the record demonstrates, appellant did not immediately seek to put the admitted statements into context by asking that the entire video be played during Trooper Strawser's testimony. Instead, the issue was raised for the first time *after* the prosecution had rested subject to the admission of its exhibits. It was only at this time that appellant requested that the entire video be admitted into evidence for the jury to view if they were so inclined. Thus, appellant cannot now reasonably contend that the trial court excluded evidence relevant to his case when it was at his election that the entire video was not placed in its entirety before the jury. *Id.* at ¶ 14. Moreover, despite the trial court's clear instructions on the manner in which the entire video could be brought into evidence, appellant made no attempt to introduce the entire video during his direct examination. *Id.* at ¶ 15, citing *Holmes* at 585 (if the additional parts are not relevant to the initial part, then the additional parts can be safely introduced during the adverse party's case).

{¶ 36} Accordingly, we find no violation of Evid.R. 106.

### 3. Statements of Appellant and Trooper Strawser

{¶ 37} Next, under the first assignment of error, appellant contends he was improperly denied an opportunity to testify with respect to anything that was said during the course of the incident. In addition to challenging the admissibility of the video we have just discussed, it appears appellant is also challenging the trial court's decision to sustain the state's objection lodged during appellant's direct examination. As previously outlined, the exchange at issue is as follows:

[APPELLANT]: The question and answer about the location of my car is a small portion of a complete conversation that I had with Trooper Strawser while I was in the back of the patrol car being taken to the county jail. And I distinctly remember that throughout that conversation I asked him a number of very detailed questions about the processes at the county jail, whether I would be allowed to post my own bond using a credit card, whether I would be—whether I was going to recover my car key which Trooper Strawser had taken custody of. And he gave me information about those processes, and what I actually experienced at the county jail was rather different.

But the detailed conversation that I had with Trooper Strawser in that car reveals that I had my wits about me and that I was not—

[PROSECUTOR]: Objection. I don't think he can—

THE COURT: Sustained. I mean, that's not something real— that's not really testimony. That may be argument later. Go ahead with your testimony.

[APPELLANT]: Nothing further, Your Honor.

(Trial Tr. 253-54.)

{¶ 38} Though appellant asserts he was prohibited from testifying, the record discloses the trial court sustained the state's objection to a portion of appellant's testimony on the basis that appellant was providing argument rather than testimony. After sustaining the objection, the trial court permitted appellant to proceed with his testimony, but appellant indicated that he had "[n]othing further." (Trial Tr. 254.) Accordingly, we do not find appellant was denied an opportunity to testify about what occurred during the incident in question.

### 4. Leading Questions

{¶ 39} Lastly, under this assigned error, appellant contends the trial court erred in refusing to allow him to use leading questions during his cross-examination of Trooper Strawser.

{¶ 40} In his case-in-chief, appellant recalled Trooper Strawser in order to impeach his prior testimony wherein he stated that, while at the jail, he physically handed

appellant the BMV 2255 form to hold and review. The state concedes that appellant should have been permitted to utilize leading questions during his examination of Trooper Strawser; however, according to the state, the trial court's limitation on the use of leading questions amounted to harmless error. We agree.

{¶ 41} Harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right. *State v. Caldwell*, 5th Dist. No. 14CA22, 2014-Ohio-4486, ¶ 20; *State v. Smith*, 4th Dist. No. 01CA13, 2002-Ohio-3402, ¶ 64, citing *State v. Sibert*, 98 Ohio App.3d 412 (4th Dist.1994) (the appellant has the burden to establish that any error is prejudicial).

{¶ 42} Appellant had the opportunity to cross-examine Trooper Strawser during the state's case-in-chief during which Trooper Strawser stated that he physcially handed the BMV 2255 form to appellant. In his case-in-chief, appellant called Deputy Young who testified that, while he witnessed Trooper Strawser read the BMV 2255 to appellant, Trooper Strawser did not physically hand the form to appellant.

{¶ 43} During Deputy Young's testimony, it was learned that an audio recording from the jail existed. Prior to recalling Trooper Strawser in his case-in-chief, appellant indicated that his examination of Trooper Strawser "would, by the very nature of my argument, be limited to something or anything that is relevant to the new evidence." (Trial Tr. 286.) Though not through the use of leading questions, Trooper Strawser again testified that he physically handed the form to appellant. Thereafter, out of the presence of the jury, the parties argued as to whether or not the audio from the jail could be played for the jury. After discussion, the trial court allowed the entire audio recording, which contained the discussion of the BMV 2255 form, to be played for the jury.

{¶ 44} Though appellant contends he should have been allowed to elicit this evidence through the use of leading questions, we do not discern, nor does appellant establish, that he was unduly prejudiced or that a substantial right was violated by the trial court's limitation on appellant's use of leading questions. As such, we conclude that any error in such limitation constituted harmless error.

{¶ 45} For the foregoing reasons, appellant's first assignment of error is overruled.

**B. Second Assignment of Error**

{¶ 46} In his second assignment of error, appellant contends the trial court erred in overruling his motion to suppress. Appellant does not challenge Trooper Strawser's initial approach of his vehicle and, instead, argues that Trooper Strawser lacked any basis for requesting he perform field sobriety tests. Therefore, it is appellant's position the trial court should have suppressed the evidence related to his arrest.

{¶ 47} In ruling on a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual issues and witness credibility. *State v. Montelauro*, 10th Dist. No. 11AP-413, 2011-Ohio-6568, ¶ 6. Therefore, an appellate court must accept the trial court's findings of fact if competent, credible evidence supports them. *Id.* However, an appellate court must independently determine as a matter of law, without deference to the trial court's conclusions, whether the trial court's decision meets the appropriate legal standard. *Id.*

{¶ 48} The Fourth and Fourteenth Amendments to the United States Constitution, as well as the Ohio Constitution, protect individuals against unreasonable searches and seizures by agents of the government. *State v. Mossman*, 10th Dist. No. 13AP-959, 2014-Ohio-2620, ¶ 6. "For purposes of the Fourth Amendment, a person has been seized when an officer conducts an investigative stop and detains the person in order to administer field sobriety tests." *Upper Arlington v. Wissinger*, 10th Dist. No. 13AP-922, 2014-Ohio-1601, ¶ 15, citing *State v. Robinette*, 80 Ohio St.3d 234, 240-41 (1997). "Accordingly, before an officer may conduct field sobriety tests, an officer must have reasonable suspicion based upon specific, articulable facts that a driver is intoxicated." *Id.* at ¶ 15.

{¶ 49} Appellant asserts that Trooper Strawser lacked a reasonable suspicion that appellant was intoxicated because the trooper did not witness appellant driving erratically, appellant's speech was not slurred, and he readily produced his license without any difficulty. Additionally, appellant contends he was "perfectly parked" with his flashers on. (Appellant's Brief, 52.)

{¶ 50} In *State v. Barnhart*, 10th Dist. No. 98AP-1474 (Aug. 17, 1999), a police officer testified at a suppression hearing that at 1:30 a.m. he observed a vehicle parked in a parking lot of a closed business establishment. The vehicle appeared to be occupied and the motor was running. The officer approached the vehicle and observed the defendant in

the driver's seat talking on a phone. The defendant rolled down the window, and the officer noticed "a very strong odor of alcoholic beverage inside the vehicle," the defendant's "eyes were very bloodshot," and the defendant appeared to be under the influence. *Id.* When asked if she had been drinking, the defendant replied only that she was looking for a party. The officer then asked the defendant to step out of the vehicle, and the officer performed a series of field sobriety tests. Upon concluding that the defendant was intoxicated, she was arrested.

{¶ 51} On appeal, the defendant argued her motion to suppress should have been granted because the officer lacked a reasonable suspicion necessary for him to approach her vehicle. This court disagreed and concluded there was not seizure at the time the officer initially approached the defendant's vehicle. Additionally, and as is relevant here, this court went on to state:

> After talking with defendant, the officer noticed that defendant's eyes were bloodshot and that she appeared to be intoxicated. While we agree with defendant that a seizure occurred at the point the officer asked defendant to step out of the car, the officer at that time could point to specific, articulable facts giving the officer a reasonable suspicion that defendant had been driving under the influence of alcohol; thus, the seizure of defendant at that time, in order to have defendant take a field sobriety test, did not violate defendant's Fourth Amendment rights.

*Id.*; *see also Columbus v. Anderson,* 74 Ohio App.3d 768, 770 (10th Dist.1991) (police officer had reasonable suspicion to conduct field sobriety tests when driver was stopped in early morning hours after officer observed the driver speeding and when the officer noticed a moderate odor of alcohol on the driver after making the traffic stop); *State v. Brock,* 12th Dist. No. CA97-09-077 (June 1, 1998) (based on officer's own personal observations of the defendant, including the defendant's bloodshot, glassy eyes and odor of alcohol, officer established requisite reasonable suspicion necessary to detain appellant until another officer arrived to conduct field sobriety tests).

{¶ 52} Here, Trooper Strawser testified at the suppression hearing that at approximately 1:50 a.m., he was on patrol when he noticed a vehicle "off on the berm" of Interstate 71. (Aug. 19, 2013 Tr. 11.) As he approached the vehicle, Trooper Strawser

noticed that the engine was running, the vehicle was in park, and the flashing lights activated. Additionally, Trooper Strawser saw appellant in the driver's seat with the backrest down. Trooper Strawser testified that he knocked on the driver's side window to get appellant's attention, and, though appellant looked up and made eye contact with the trooper, appellant "laid back down and went back to sleep." (Aug. 19, 2013 Tr. 12.) Trooper Strawser knocked again and then appellant rolled down the window. Trooper Strawser noticed "an immediate strong odor of alcohol coming from the vehicle, and, as I stated, he was the only individual in the vehicle." (Aug. 19, 2013 Tr. 13.) Trooper Strawser testified he also noticed that appellant's "eyes were red and glassy, watery, bloodshot." (Aug. 19, 2013 Tr. 13.) On cross-examination, Trooper Strawser testified that the length of time he knocked on the window before appellant fully awakened, the odor of alcohol, and appellant's red, bloodshot, glassy eyes made Trooper Strawser believe, prior to the field sobriety tests, that appellant may have been intoxicated and driving while impaired.

{¶ 53} We find that, under the circumstances presented here, there were specific, articulable facts giving rise to a reasonable suspicion that appellant was intoxicated, thereby justifying Trooper Strawser's request that appellant perform field sobriety tests. Although no erratic or illegal driving was observed, appellant was encountered asleep in his vehicle on the side of the interstate at 1:52 a.m. Appellant told Trooper Strawser that he had been there for 10 to 20 minutes, and Trooper Strawser observed a strong odor of alcohol. Additionally, appellant's eyes were red, glassy, watery, and bloodshot. In light of these facts, we conclude Trooper Strawser had a reasonable suspicion that appellant was intoxicated, and the trial court did not err by denying appellant's motion to suppress.

{¶ 54} Accordingly, we overrule appellant's second assignment of error.

### C. Third and Fourth Assignments of Error

{¶ 55} In his third assignment of error, appellant challenges the sufficiency of the evidence supporting his convictions. In his fourth assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. Though asserted in separate assignments of error, appellant discusses these assignments of error together, and we will do likewise.

{¶ 56} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 57} In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime").

{¶ 58} In contrast to assessing the sufficiency of the evidence, when presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 59} In conducting a manifest weight of the evidence review, we may consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting such review, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 60} Appellant was convicted of OVI, in violation of R.C. 4511.19, which provides in relevant part:

> (A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
>
> (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.

{¶ 61} According to appellant, his OVI conviction is against the weight and the sufficiency of the evidence because the "only evidence of [his] driving was circumstantial and that evidence indicated that [his] driving had not been impaired at all." (Appellant's Brief, 53.) It is appellant's position that he demonstrated no signs of slurred speech, thick tongue or difficulty standing and that the only evidence of impairment was his "difficulties on the field sobriety tests where many people * * * would have similar problems in our most sober of moments." (Appellant's Brief, 54.) According to appellant, even if the evidence demonstrates that he was impaired "to a limited degree," the evidence indicates that he "was not greatly impaired." (Appellant's Brief, 54.) Further, appellant states there was no evidence that would allow a trier of fact to find impairment at the time he was driving.

{¶ 62} Initially, we note that the observation of impaired driving is not necessarily a prerequisite to a conviction for OVI. *State v. Henderson*, 5th Dist. No. 2004-CA-00215, 2005-Ohio-1644, ¶ 31, citing *State v. Barrett*, 5th Dist. No. 00CA-47 (Feb. 26, 2001). Additionally, "proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence." *State v. Griffin*, 13 Ohio App.3d 376, 377 (1st Dist.1979). Circumstantial

evidence is the "proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind." *State v. Bentz*, 2 Ohio App.3d 352, 355 (1st Dist.1981), fn. 6, citing 1 Ohio Jury Instructions, Section 5.10(d) (1968). "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks* at paragraph one of the syllabus.

{¶ 63} The totality of the evidence in this case clearly supported the inference that defendant was operating the motor vehicle while under the influence of alcohol. Appellant testified that, between approximately 8:30 and 10:30 p.m., he had one beer with dinner and then he had two beers between the approximate time frame of 11:30 p.m. to 1:30 a.m. When asked how long he may have been asleep prior to Trooper Strawser knocking on the window, appellant stated "I don't recall, but I recall when we watched the video that I told the trooper that I had been parked for roughly 10 or 20 minutes, or 10 to 20 minutes." (Trial Tr. 243.) Trooper Strawser testified that when appellant rolled down the window, he detected "a strong odor" of an alcoholic beverage, and he observed appellant's "eyes were red, bloodshot, glassy, watery which, in addition to the odor of alcoholic [sic] before coming from his person, led me to believe that he had been consuming alcohol and was possibly impaired." (Trial Tr. 64-65.) In addition, the evidence demonstrated that out of the four field sobriety tests performed, appellant unsuccessfully performed two and refused to complete one.

{¶ 64} Upon reviewing the evidence in a light most favorable to the prosecution, we conclude that any reasonable trier of fact could have found appellant guilty of OVI based upon R.C. 4511.19(A)(1)(a). Moreover, we conclude appellant's conviction for OVI was not against the manifest weight of the evidence, as there is no indication that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Adams*, 3d Dist. No. 3-06-24, 2007-Ohio-4932 (the weight and sufficiency of the evidence supported the defendant's conviction for OVI where he was found asleep in the driver's seat at a stop sign, the officer observed an odor of alcohol, and the defendant had red, bloodshot eyes); *State v. Lewis*, 131 Ohio App.3d 229 (3d Dist.1999) (the weight and sufficiency of the evidence supported a conviction for driving under the influence where the defendant was found asleep in the driver's seat of a legally parked car, a strong odor of alcohol was

detected, the defendant's eyes were bloodshot and glassy, and the defendant stated he had been asleep for approximately 30 minutes); *see also State v. Heiney*, 11th Dist. No. 2006-P-0073, 2007-Ohio-1199.

{¶ 65} Also under his third and fourth assignments of error, appellant challenges his conviction for parking on a highway in violation of R.C. 4511.66. The state concedes that appellant's conviction for parking on a highway was not supported by sufficient evidence and that this conviction must be reversed on that basis.

{¶ 66} Having found that appellant's conviction for OVI, in violation of R.C. 4511.19(A)(1)(a), is supported by both the sufficiency and the weight of the evidence, but that appellant's conviction for parking on a highway, in violation of R.C. 4511.66, is not supported by sufficient evidence, appellant's third and fourth assignments of error are sustained in part and overruled in part.

## IV. CONCLUSION

{¶ 67} For the foregoing reasons, appellant's first and second assignments of error are overruled, and appellant's third and fourth assignments of error are overruled with respect to his conviction for OVI and are sustained with respect to his conviction for parking on a highway. Consequently, the judgment of the Franklin County Municipal Court is hereby affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law and this decision.

*Judgment affirmed in part, reversed in part;*
*cause remanded.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____