[Cite as *In re L.P.*, 2015-Ohio-4164.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: L.P.
     L.P.

C.A. No.     27792

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN12-10-0677
                  DN13-10-0679

DECISION AND JOURNAL ENTRY

Dated: October 7, 2015

HENSAL, Presiding Judge.

{¶1} Appellant, L.P. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights to two of his minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Father is the biological father of five minor children with three different women. Although the trial court dependency proceedings involved several parents and children, this appeal does not. Father is the only parent who is a party to this appeal and he confines his assigned errors to the trial court's termination of his parental rights to two of his children.[1] Consequently, this Court will limit its review to the final disposition of those two children: L.P.,

---

[1] At the time Father appealed, his two youngest children remained in the temporary custody of CSB. Although his oldest child was placed in the legal custody of a relative, he has not challenged that disposition on appeal.

born July 27, 2004; and L.P., born May 26, 2006. Their mother, R.D., did not participate in the trial court proceedings and is not a party to this appeal.

{¶3} CSB first became involved with L.P. and L.P. during June 2009. At that time, they were living with R.D. (their mother) and B.D., their older half-sibling who is the child of R.D. and another father. CSB filed a complaint to remove the children from R.D.'s custody, alleging that they were neglected and dependent because R.D. often left them alone or at the home of Father or others who did not consistently supervise the children or meet their basic needs. L.P., L.P., and B.D. were later adjudicated dependent children by stipulation of the parties.

{¶4} CSB's reunification efforts during that case initially focused on R.D., who had been the sole residential parent of all three children. R.D. failed to comply with the requirements of the case plan, however, so Father became the focus of CSB's reunification efforts. Because Father had a criminal history that included multiple charges for domestic violence, the case plan required him to complete anger management classes and demonstrate that he was able to control his anger. After approximately one year, during which Father completed anger management and parenting classes and participated in other case planning services, L.P., L.P., and their older half-sister, B.D., were placed in Father's legal custody under an order of protective supervision by CSB. The trial court eventually terminated protective supervision and closed that case in February 2011.

{¶5} During October 2011, CSB filed a dependency case involving Father's oldest child, A.S., who was then almost 10 years old and living with her mother, J.S., and two other half-siblings who are not Father's children. It is unclear from the record whether Father had much involvement with A.S. before the 2011 dependency case. Because J.S. had serious

substance abuse problems, A.S. was later placed in the temporary custody of Father. During the temporary placement, the guardian ad litem and the magistrate expressed concerns about Father's history of domestic violence, that he was stressed emotionally and financially by providing care for several children, and that A.S. spent extended periods of time with her aunt and expressed a desire to live with her. In addition to providing a home for L.P., L.P., B.D., and A.S., Father's then live-in paramour, S.B., gave birth to a child in January 2012 and another child in December 2012. A.S. was placed in Father's full legal custody, however, and that case was later closed.

{¶6} When the current case began in October 2013, Father was the custodial caregiver of six children ranging in age from ten months to 13 years old. CSB removed A.S. from Father's home after she disclosed to school personnel that she and the other children lived in a home without hot water or adequate food and that they were often exposed to marijuana use and domestic violence between Father and S.B. She allegedly later explained that she had not spoken to authorities sooner because she was afraid that Father would retaliate by beating her. The other children were later removed from Father's home based on the same concerns.

{¶7} All six children were adjudicated dependent and placed in the temporary custody of CSB. The original case plan was later agreed to by all parties and adopted by the trial court on January 24, 2014. The case plan required trauma assessments for the children followed up by ongoing counseling. Father was required to obtain and maintain stable housing and employment and to complete anger management and parenting classes and demonstrate an ability to appropriately supervise and discipline the children and consistently meet their basic needs.

{¶8} Father failed to obtain most of the required reunification services and refused to accept any responsibility for his family's situation. On September 9, 2014, CSB moved for

permanent custody of L.P. and L.P. Following a hearing on the motion, the trial court found that the children could not be placed with Father within a reasonable time or should not be placed with him and that permanent custody was in their best interests. Father appeals and raises six assignments of error.

II.

ASSIGNMENT OF ERROR I

THE COURT OF APPEALS LACKS JURISDICTION TO HEAR THIS APPEAL BECAUSE THE TRIAL COURT HAS NOT ISSUED A FINAL, APPEALABLE ORDER FROM THE ORIGINAL ADJUDICATORY AND DISPOSITIONAL HEARINGS.

{¶9}    Father's first assignment of error is that the trial court failed to issue a final, appealable order after the adjudicatory and dispositional hearings. The record reveals that a magistrate adjudicated the children dependent and placed them in the temporary custody of CSB and that the trial court adopted the magistrate's decisions and later overruled Father's objections. Father does not challenge the merits or validity of the adjudicatory or dispositional decisions. Instead, he argues that the trial court did not issue a final, appealable order after the adjudication and disposition of the children and, for that reason, this Court lacks jurisdiction to hear this appeal.

{¶10}  Any lack of finality in that prior judgment would have no bearing on this Court's appellate jurisdiction, however, because Father has not appealed from the adjudication and initial disposition of his children, nor does he attack its merits in this appeal. Instead, Father appeals from the termination of his parental rights, which has long been recognized as an order that is final and appealable by a parent. *See In re Masters*, 165 Ohio St. 503 (1956), paragraph one of the syllabus. Father fails to cite legal authority, nor is this Court aware of any, to support the underlying premise of his argument that the finality of a permanent custody judgment hinges

upon whether the prior adjudication and disposition of the children was final and appealable. Father's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT ADMITTED INTO EVIDENCE JOURNAL ENTRIES OF CONVICTIONS WHEN THE EXHIBITS DID NOT COMPLY WITH [CRIMINAL RULE] 32(C) AND THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH THAT FATHER WAS THE DEFENDANT IN THOSE PRIOR CASES.

{¶11} Father's second assignment of error is that the trial court erred in admitting journal entries from several criminal cases involving a defendant with his same name because CSB failed to prove that he is the same man who is identified in the entries. To establish reversible error, however, Father must demonstrate not only that the trial court committed error but also that he suffered prejudice as a result. *See Lowry v. Lowry*, 48 Ohio App.3d 184, 190 (4th Dist.1988), citing *Gries Sports Ents., Inc. v. Cleveland Browns Football Co., Inc.*, 26 Ohio St.3d 15, 28 (1986).

{¶12} Only one of the criminal cases arose during this juvenile case, a case in which a defendant with the same name as Father requested and received treatment in lieu of conviction to charges of breaking and entering and possession of criminal tools. Evidence that Father was the defendant identified in that case was established through the testimony of witnesses, and Father raised no objections to that aspect of their testimony. In fact, Father cross-examined the witnesses about the journal entries in that case to clarify that he was not convicted of those criminal charges but instead received treatment in lieu of conviction.

{¶13} The other criminal journal entries, which involved nonpayment of child support and community control violations, predated this dependency case by four to eight years. The reasoning of the permanent custody decision does not mention those cases or otherwise suggest

that the trial judge considered that evidence to reach its conclusion that Father had failed to substantially remedy the conditions that placed the children outside the home during this case or that permanent custody was in their best interests. Because Father has failed to demonstrate that he was prejudiced by any of these criminal journal entries, his second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT ADMITTED INTO EVIDENCE THE CHILDREN'S PSYCHOLOGICAL RECORDS WHEN THE BUSINESS RECORDS WERE NOT COMPLETE AND ACCURATE, AND DID NOT MEET THE BUSINESS RECORDS EXCEPTION TO HEARSAY.

{¶14} Father's third assignment of error challenges the admission of the psychological records of four of the children because, according to Father, the records were not properly authenticated and were not complete. To the extent that the records may not have been fully authenticated, Father has failed to show that he suffered any prejudice from the admission of the psychological records. The counselors who prepared the records testified at length about their assessments and counseling of the children and the contents of their records. *See State v. Wright*, 9th Dist. Lorain No. 05CA008675, 2006-Ohio-926, ¶ 8 (concluding that, because the substance of a detective's testimony was included in a report that was properly admitted into evidence, any error in admitting his testimony was harmless).

{¶15} Next, Father asserts that the psychological records of L.P. and L.P. were not complete because they included the children's clinical files but not their nonclinical files. Specifically, the counselor testified on cross-examination that the children's clinical files did not

include their registration forms or drawings and artwork.[2]  Father objected to the admission of

the children's psychological records, asserting that he had the right to require that the clinical and

nonclinical portions of their files be included.

{¶16}  Father relies on Evidence Rule 106, which provides:

> When a writing or recorded statement or part thereof is introduced by a party, an
> adverse party may require the introduction at that time of any other part or any
> other writing or recorded statement which is otherwise admissible and which
> ought in fairness to be considered contemporaneously with it.

{¶17}  As this Court emphasized in *In re S.J.*, 9th Dist. Summit No. 22554, 2005-Ohio-

4945, ¶ 5, Evidence Rule 106 is "is intended to avoid the misleading impressions that occur

when statements are taken out of context."  *S.J.* involved a situation in which the trial court heard

and explicitly considered portions of a report about the suitability of the mother's home in

another state, but refused the mother's request to admit the entire report.  By refusing the

mother's request to consider the entire report, this Court held that the trial court committed

reversible error in that case.  *Id*. at ¶ 15-17.

{¶18}  Even if this Court were to assume that Evidence Rule 106 could apply to the

children's psychological files, the record in this case does not suggest that CSB admitted only

select portions of those records.  As a qualified expert in her field, the counselor testified that the

children's psychological files were complete.  She explained that she did not include their

drawings and artwork in the records because that is not her agency's practice.

{¶19}  Father failed to demonstrate that the children's records required supplementation

under Evidence Rule 106.  It was his burden to demonstrate to the court that the children's

---

[2] Father incorrectly asserts in his brief that the clinical files also failed to include diagnostic assessments, clinical notes, and goal forms.  The counselor explicitly testified that those items were included in the clinical files that were admitted into evidence and the record reveals that they were.

drawings or artwork were admissible, relevant, and "ought in fairness to be considered contemporaneously" with the children's psychological records. Evid.R. 106; *see, e.g.*, *State v. Koss*, 10th Dist. Franklin No. 13AP-970, 2014-Ohio-5042, ¶ 33; *State v. Scott*, 2d Dist. Montgomery No. 21260, 2006-Ohio-4016, ¶ 9; *State v. Williams*, 115 Ohio App.3d 24, 41 (11th Dist.1996).

{¶20} Although Father suggests that the trial court should have reviewed the drawings to determine their relevance, he did not subpoena the children's drawings or seek a continuance to obtain them, nor does the record suggest that anyone else brought them to the hearing. Father had the opportunity to review the children's psychological records during discovery. It is apparent from the face of the children's clinical records that the counselor asked them to draw their families and that those drawings are not included in their clinical records.

{¶21} Father's only objection to the substance of the counselor's testimony in this regard is that she briefly referred to a drawing prepared by the younger L.P. that was not included in his clinical file. She explained through her testimony and written report that she used the family drawing to facilitate her discussion with L.P. She did not describe the drawing in detail, nor did her testimony attach any diagnostic or treatment significance to it. Consequently, Father has failed to demonstrate that the trial court committed reversible error by admitting the children's psychological records. Father's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR
WHEN IT ALLOWED A CHILD PROTECTIVE CASEWORKER TO TESTIFY
AS TO THE BEST INTEREST OF THE CHILDREN AND TESTIFY AS TO
THE CHILDREN'S WISHES AND DESIRES.

{¶22} Next, Father assigns error to the trial court allowing the caseworker to testify about the wishes of the children and to offer her opinion about their best interests. Although he

also argues that hearsay statements of the children were improperly admitted through the testimony of several witnesses, this Court will not address that argument because it is not encompassed within this assigned error, nor has Father raised it through a separate assignment of error. *See In re S.H.*, 9th Dist. Summit Nos. 27574, 27589, 27595, 2015-Ohio-1259, ¶ 33.

**{¶23}** Consequently, this Court reviews the propriety of the caseworker's testimony only insofar as she gave her opinion about the best interests of the children and testified about their wishes, despite Father's objections to that testimony. This Court has held that only the guardian ad litem is authorized to testify to the trial court about the best interest of the children and their wishes. *See In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 27, citing *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, *5 (Jan. 2, 2002). In both *A.K.* and *Smith*, however, this Court found reversible error because the trial court specifically considered the caseworker's testimony about the child's best interests and/or wishes in lieu of considering that evidence directly from a guardian ad litem, who is charged with bringing that evidence before the court. In *A.K.*, a legal custody case, no guardian ad litem had been appointed to represent the children's wishes and in *Smith*, the trial court disregarded the conflicting testimony of the guardian ad litem. *Id*. at ¶ 27-29.

**{¶24}** In this case, the caseworker's testimony about the children's wishes or best interests did not conflict with the testimony of the guardian ad litem. The caseworker and guardian ad litem agreed that the children did not want to return to Father's home and that returning to his home would not be in their best interests. Consequently, Father has failed to demonstrate that he suffered any prejudice from that aspect of the caseworker's testimony, even if it was not properly before the court. Father's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY ALLOWING [CSB] TO HAVE ONE OF ITS WITNESSES DEEMED AN EXPERT WITHOUT PRIOR NOTICE TO FATHER.

{¶25} Father's fifth assignment of error is that the trial court erred by allowing one of CSB's witnesses to testify as an expert about her psychological evaluations of B.D. and A.S. Father does not argue that the witness was not qualified as an expert. Instead, he argues only that he was not given proper notice that she would testify and, therefore, was not prepared to thoroughly cross-examine her about her qualifications to present expert testimony in this case. Father did not request a continuance of the hearing, however, which could have avoided any prejudice that might have resulted from a lack of prior notice about the witness. *See State v. Riddle*, 3d Dist. Defiance No. 4-02-18, 2003-Ohio-478, ¶ 17. Although Father's assigned error includes the term "plain error," he has failed to articulate a plain argument or otherwise demonstrate that he was prejudiced by a lack of notice that this expert would testify. Consequently, Father's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED FATHER'S PARENTAL RIGHTS AS THE [JUDGMENT] WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶26} Finally, Father challenges the weight of the evidence supporting the permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned, orphaned, have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month

period, or that they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under Section 2151.414(D). *See* Former R.C. 2151.414(B)(1)[3] and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶27} The trial court found that the first prong of the permanent custody test had been satisfied because L.P. and L.P. could not be returned to Father within a reasonable time or should not be returned to him based, in part, on its factual finding under Revised Code Section 2151.414(E)(1) that Father had failed to substantially remedy the conditions that caused the children to be placed outside his home.[4]

{¶28} There was substantial evidence before the trial court to support its conclusion that L.P. and L.P. could not or should not be returned to Father's custody because he had failed to substantially remedy the conditions that caused the children to be placed outside the home. Father argues that the initial reasons for the children's removal did not include substantiated domestic violence or inappropriate discipline by Father, but this Court has previously emphasized that Revised Code Section 2151.414(E)(1) will "encompass not only the conditions that led to the initial removal of the children from the home, but also problems with the home environment that the agency identified after the children's removal, which caused the juvenile court to continue its placement of the children outside the home." *In re J.H.*, 9th Dist. Summit No. 24555, 2009-Ohio-2223, ¶ 9, citing *In re A.C.*, 9th Dist. Summit No. 23627, 2007–Ohio–5525, ¶ 17–22.

---

[3]  Section 2151.414(B)(1) was amended effective September 17, 2014.
[4]  Although the trial court made an alternate finding that Section 2151.414(E)(4) was satisfied because Father had demonstrated a lack of commitment to the children, this Court confines its review to the trial court's finding under Section 2151.414(E)(1).

{¶29} Although the children were initially reluctant to disclose details about Father's violence to CSB or the court, CSB eventually learned that L.P. and L.P. had frequently been exposed to Father's angry outbursts and violent behavior. In addition to statements made by the children to their counselors and others, the trial court heard compelling testimony from Father's former live-in paramour, S.B., and one of the older children who was removed from Father's home in this case. Despite Father's continued denials, they testified that Father had problems controlling his anger and was physically violent in the home. The testimony described the frequent fights between Father and S.B., which would often lead to one or both of them throwing furniture and other objects at each other. During these fights, when they were able, the oldest children would remove the younger children from the room to protect them from injury.

{¶30} The trial court also heard direct testimony about Father frequently "whooping" the children on their bare skin with a belt. Each "whooping" would last five to ten minutes and sometimes left welts on the children's skin that would last for several weeks. One of the family members also testified that Father had "choked," kicked, and/or slammed one or more of the children to the ground. She further testified that Father had told her to lie to CSB, so she did not initially disclose these details because she feared retaliation by Father.

{¶31} There was also undisputed evidence that Father lacked stable housing and employment when this case began. The family moved from place to place and often lived without utilities and/or faced eviction. Two household members testified that Father would buy boxes of candy bars and make the older children sell them to raise money for the family. He forced the children to sell the candy outside stores, for hours at a time, even in inclement weather. If the children refused to sell or failed to account for all of the candy or money, he would whoop them.

{¶32} Consequently, CSB established that the children had been removed and continued to be placed outside Father's home because they had been exposed to domestic violence and physical abuse in the home and Father was not otherwise providing for their basic needs. The primary focus of the case plan was on Father's unresolved anger management problems and his lack of stable housing and income.

{¶33} Although Father argues that the case plan did not become binding on the parties until June 2014, when the trial court ruled on his outstanding objections to the magistrate's adjudicatory decision, this Court is not persuaded by his argument. On January 13, 2014, the magistrate adjudicated the children dependent and, through a separate decision on January 24, 2014, the magistrate placed them in the temporary custody of CSB and adopted the case plan. The trial court adopted the magistrate's dispositional order as well as the case plan that same day.

{¶34} The automatic stay provisions of Juvenile Rule 40(D)(4)(e)(i) had no application to the implementation of the case plan as adopted by the magistrate on January 24 because Father filed no objections to that decision. Although Father filed timely objections to the magistrate's January 13 decision that adjudicated the children, he filed no objections to the magistrate's separate, January 24 dispositional decision, in which the magistrate adopted the case plan. In fact, Father had agreed to the case plan prior to its adoption. The plan was also adopted by the trial court on January 24, 2014, at which point it became binding on all of the parties.

{¶35} Through an amended case plan filed February 20, 2014, Father was required to obtain a parenting evaluation. He obtained a parenting evaluation at the end of June 2014. Although he argues on appeal that the caseworker never reviewed the parenting assessment with him, Father had been told to return to the office of the evaluator to discuss the recommended

treatment plan, but he never did. The evaluator expressed concern that Father denied having a problem controlling his anger and refused to accept any responsibility for his family's situation, nor was he concerned about his children living outside his care. Father told the evaluator that he had been the primary caretaker of the children, yet he knew little about their likes and dislikes, activities, or their routines.

{¶36} Although the evaluator had recommended that Father complete intensive parenting classes and individual therapy to address his anger management problems, Father failed to obtain any of those services during this case. He sought counseling on his own, but it focused only on Father coping with the stress of having his children removed. The counselor did not work with Father to develop appropriate anger management skills because he did not disclose to her that he had ever lost his temper or been physically violent with anyone.

{¶37} When CSB filed its permanent custody motion and even by the time of the hearing, Father continued to blame others for his family's situation and refused to admit that he had been physically violent with anyone in his home or that he was otherwise responsible for his children living in foster care. He also continued to lack stable employment and housing. Consequently, the evidence before the trial court clearly and convincingly supported its conclusion that Father had failed to substantially remedy the conditions that caused the children to be placed outside the home.

{¶38} Father also challenges the trial court's finding that permanent custody was in the best interest of both children. When determining the children's best interests under Revised Code Section 2151.414(D), the juvenile court must consider all the relevant enumerated factors: the interaction and interrelationships of the children, their wishes, the custodial history of the

children, and their need for permanence in their lives. *See In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

**{¶39}** During this case, Father's interaction with L.P. and L.P. was limited to supervised visits because Father had not worked on the goals of the case plan and CSB remained concerned that he posed a threat to the children. Although L.P. and L.P. had mixed feelings about Father, they looked forward to visiting with him. Father did not consistently attend the scheduled visits, however, which was upsetting to L.P. and L.P., both of whom already had emotional and behavioral problems.

**{¶40}** At the time of the hearing, L.P. and L.P. were eight and ten years old. The guardian ad litem testified that the older L.P. had consistently told her that he did not want to return to Father's home but wanted to stay with his foster family. The younger L.P. had more serious psychological problems that had led to his removal from one of his foster homes. He was more conflicted and had gone back and forth between telling the guardian ad litem that he did or did not want to go home. Shortly before the hearing, he told her that he did not want to return to Father's home. The guardian ad litem also expressed her opinion that permanent custody was in the best interest of the children because Father's home was not a safe or healthy environment for them. She expressed concern that Father continued to deny that he ever beat the children or forced them to sell candy, but instead insisted that all of the older children and his former paramour were lying.

**{¶41}** L.P. and L.P. had spent most of their lives moving between caregivers and were in need of a legally secure permanent placement. They lived with their mother, R.D., until they were three and almost five years old. It is unclear whether Father ever lived with them prior to their removal from R.D.'s custody in 2009. L.P. and L.P. then spent the next three years living

with Father, first on a temporary basis and then in his legal custody, which was intended to be a permanent placement. *See* R.C. 2151.42(B). They were removed from Father's custody at the beginning of this case and, by the time of the hearing, had spent more than a year in CSB custody.

{¶42} R.D. had abandoned them and Father was not prepared to provide them with a suitable home. Because CSB had been unable to find a suitable relative who was willing and able to provide them with a legally secure permanent placement, the trial court reasonably concluded that such a placement would be achieved by granting CSB permanent custody so that L.P. and L.P. could be adopted.

{¶43} Consequently, the trial court reasonably concluded that Father had failed to substantially remedy the conditions that caused L.P. and L.P. to be placed outside the home and that permanent custody was in their best interests. Father's sixth assignment of error is overruled.

III.

{¶44} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JENNIFER CUNDIFF, Attorney at Law, for Appellee.

CHRISTY WESIG, Guardian ad litem.