[Cite as *In re S.M.*, 2016-Ohio-7816.]

STATE OF OHIO      )          IN THE COURT OF APPEALS
                     )ss:     NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE    )

IN RE: S.M.
      S.S.
      S.S.
      S.S.
      N.K.
      W.K.

C.A. Nos.     16AP0045
                   16AP0046
                   16AP0047
                   16AP0048
                   16AP0049
                   16AP0050

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE Nos.    2014 JUV C 000641
                   2014 JUV C 000642
                   2014 JUV C 000643
                   2014 JUV C 000644
                   2014 JUV C 000645
                   2014 JUV C 000718

DECISION AND JOURNAL ENTRY

Dated: November 21, 2016

SCHAFER, Judge.

{¶1} Appellant, Natasha M. ("Mother"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her six minor children and placed them in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the biological mother of S.M., born November 3, 2003; S.S., born February 26, 2006; S.S., born February 28, 2007; S.S., born January 20, 2008; N.K., born February 20, 2013; and W.K., born June 14, 2015.

{¶3} This family originally resided in Michigan, where they had been involved with Child Protective Services because of domestic violence in the home that had resulted in injury to the oldest child, S.M. The family relocated to Wooster during February 2013.

{¶4} CSB received referrals about the family during November 2013 and opened a voluntary case with Mother during January 2014 due to concerns about drug use and domestic violence in the home. Mother admitted that she and her children had often been the victims of domestic violence perpetrated by the father of her then youngest child, N.K. She also admitted that the father used illegal drugs, but did not admit then that she also abused drugs.

{¶5} During March and April 2014, Mother tested positive for marijuana and cocaine. CSB continued to receive referrals about domestic violence and drug use in the home and, through its own experience with the family, had become aware of the poor condition of the home and the inability of the parents to meet the children's basic needs.

{¶6} Consequently, on June 5, 2014, CSB filed complaints to allege that S.M., S.S., S.S., S.S., and N.K. were neglected and dependent children. The trial court later adjudicated the children dependent and allowed them to stay in Mother's custody under an order of protective supervision. Two months later, following another incident of domestic violence perpetrated by the father of N.K. against Mother and one of the children, the trial court issued an order that the father have no contact with Mother or the children.

**{¶7}** On December 8, 2014, S.M. was removed from Mother's custody and placed in the emergency temporary custody of CSB. Mother had contacted the agency and asked that S.M. be removed from her home because she was then pregnant with W.K. and was unable to control S.M.'s behavioral problems and physical aggression.

**{¶8}** On April 27, 2015, the trial court removed the other children from Mother's custody because she continued to violate the no contact order by allowing the father of N.K. to have contact with her and the children. CSB also believed that Mother had been exposing the children to another man who was a sex offender. Moreover, Mother was not complying with the substance abuse or domestic violence components of the case plan. Although Mother admitted that she had a past substance abuse problem, she denied that she had a drug problem during this case and refused to engage in substance abuse treatment or drug testing.

**{¶9}** Shortly after W.K. was born, CSB filed a complaint to allege that he was an abused, neglected, and dependent child because he tested positive for marijuana and cocaine at the time of his birth. W.K. was later adjudicated dependent and placed in the temporary custody of CSB.

**{¶10}** Mother did not appear for W.K.'s adjudicatory or dispositional hearings. In fact, Mother stopped visiting her five older children two weeks before W.K. was born. Mother stopped attending hearings and failed to maintain any contact with CSB, the guardian ad litem, or the trial court. Mother's trial counsel also informed the trial court that she also had been unable to contact Mother.

**{¶11}** CSB eventually moved for permanent custody of all six children, alleging, among other grounds, that their parents had abandoned them and that permanent custody was in their best interests. After CSB moved for permanent custody, Mother and the father of N.K. and W.K.

were indicted and later convicted of felony drug charges and sentenced to periods of incarceration of one and three years.

{¶12} This case proceeded to a two-day hearing on the permanent custody motions. On June 28 and June 29, 2016, the trial court terminated Mother's parental rights and placed each child in the permanent custody of CSB.[1] On August 1, 2016, Mother's appointed counsel filed a notice of appeal in each child's case and the six appeals were later consolidated.

{¶13} Because Mother's counsel filed these appeals more than 30 days after the trial court entered its permanent custody judgments, this Court initially questioned its jurisdiction to hear the consolidated appeal and CSB filed a motion to dismiss the appeal. This Court lacked access to the trial court record at that time, however, so it postponed ruling on the timeliness of the consolidated appeal.

{¶14} This Court has since reviewed the appellate record that was transmitted by the juvenile court. The record fails to reveal that the appeal is untimely because it does not demonstrate proper service of the permanent custody decisions. Specifically, the clerk did not make a notation of service on the docket in any of the six children's cases.[2] *Scott v. McCluskey*, 9th Dist. Summit No. 25838, 2012-Ohio-2484, ¶ 20 ("In the absence of a notation in the docket, service is not complete."). "Therefore, the time for filing a notice of appeal never began to run because the trial court failed to comply with Civ.R. 58(B) * * * [and] appellant's appeal in this case was timely filed under App.R. 4(A)." *In re Anderson*, 92 Ohio St.3d 63, 67 (2001). *See*

---

[1] The judgment pertaining to W.K. was filed on June 29. All of the other judgments were filed on June 28.

[2] Although CSB submitted uncertified documents to this Court to suggest that electronic service to counsel was noted on the docket, none of that information is included in the appellate record that was transmitted by the clerk of courts.

*also Clermont Cty. Transp. Improvement Dist. v. Gator Milford, L.L.C.*, 141 Ohio St.3d 542, 2015-Ohio-241, syllabus.

{¶15}  In lieu of a merit brief, appellate counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), in which she asserted that there were no meritorious issues to raise on Mother's behalf and that an appeal would be frivolous.  Counsel moved this Court to accept the *Anders* Brief in lieu of a merit brief and to permit her to withdraw from the case.

{¶16}  Mother's appellate counsel presented four potential issues for review but concluded that none of them has merit.  This Court agrees.

### Possible Issue for Review I

**The trial court erred by finding that permanent custody was in the children's best interests.**

### Possible Issue for Review II

**The trial court erred by finding permanent custody was in the best interest of the children where multiple relative placements were available for the children.**

### Possible Issue for Review III

**Appellant-Mother was afforded ineffective assistance of counsel because counsel did not ask for a continuance of the final hearing or have Appellant-Mother transported so that she could attend and offer evidence at the final hearing.**

### Possible Issue for Review IV

**The trial court erred by granting permanent custody of W.K. to [CSB] when less than five months had passed on his case and Appellant-Mother could complete her services should the trial court grant the extensions permitted by law.**

{¶17}  Because the possible issues for review are closely related, this Court will address them together.  To begin with, there is no merit to the assertion that the second day of the hearing should have been continued and/or that Mother should have been transported to attend.  Mother

missed the first day of the hearing, although she had received notice and was not then incarcerated, and informed her counsel that she agreed to allow the second day of the hearing to go forward without her being present.

{¶18}  The remaining possible issues pertain to the substantive merits of the permanent custody decision.  Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D).  *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶19}  The trial court found that CSB satisfied the first prong of the permanent custody test because Mother had abandoned all of her children.  The record reveals that, at the time that CSB moved for permanent custody, Mother had not had contact with her five oldest children for more than five months and had not had contact with then five-month-old W.K. since shortly after his birth.  It was not until several months after CSB moved for permanent custody that Mother was indicted and incarcerated on felony drug charges.

{¶20}  Next, the trial court found that permanent custody was in the best interests of all six children.  Because Mother's youngest child, W.K., had been in CSB's custody for much less time than his older siblings, the trial court was not time barred from extending temporary custody

in his case. *See* R.C. 2151.415(D)(4). Therefore, appellate counsel asserts a possible issue of whether the trial court erred in failing to extend temporary custody in his case. The trial court was required to conduct a best interest analysis to determine whether to place W.K. in the permanent custody of the agency or to extend temporary custody. Moreover, the trial court would have had authority to extend temporary custody only if it also found that Mother had made "significant progress" on the case plan and that there was reasonable cause to believe that W.K. would be reunified with her or otherwise permanently placed during the extension period. R.C. 2151.415(D)(1). As detailed above, Mother had not made significant progress on the reunification goals of the case plan and there was no evidence that W.K. could be returned to her custody within the extension period.

{¶21} Furthermore, the record includes overwhelming evidence that permanent custody was in the best interests of all six children. When determining the children's best interests under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, the custodial history of the children, and their need for permanence in their lives. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. The trial court was also required to consider its finding that Mother abandoned her children. *See* R.C. 2151.414(D) and R.C. 2151.414(E)(10).

{¶22} While the children resided outside her home, Mother was permitted to visit them weekly for two-hour, supervised visits. Mother did not attend the scheduled visits consistently, however, and the children would become upset and act out when she failed to come. Before W.K. was born in June 2015, Mother stopped visiting her children entirely. By the end of the permanent custody hearing, Mother had not seen any of her children for almost one year. She

had not developed a relationship with W.K. because she had not seen him since shortly after his birth.

{¶23} Because Mother had abandoned her children and had made no efforts to work on the case plan or provide for their basic needs, the guardian ad litem recommended that all six children be placed in the permanent custody of CSB so they could be placed for adoption. Mother's children were in need of a legally secure permanent placement because the five oldest children had lived in temporary placements for approximately two years and W.K. had lived in a temporary placement for his entire life. Although Mother's appellate counsel raised a possible issue about whether CSB had adequately considered relatives for possible placement of the children, the evidence before the trial court demonstrated that the agency had investigated maternal and paternal relatives to provide permanent homes for the children. CSB had contacted several relatives who lived in this area and out of state but, by the time of the hearing, had been unable to find any suitable relative who was willing and able to take legal custody of any of the children. Several relatives had criminal backgrounds or other problems that prevented them from being approved for placement, while others who may have been suitable had removed themselves from consideration because they were not willing or able to provide the children with a permanent home.

{¶24} There is nothing in the record to suggest that any of the possible issues for review have merit. Moreover, this Court's independent review of the record has failed to reveal any issues that would arguably support a reversal of the judgment of the trial court. Consequently, Mother's appeal is without merit and frivolous under *Anders*, 386 U.S. 738 (1967). The request by Mother's attorney for permission to withdraw is granted.

III.

**{¶25}** Mother's appeal is without merit. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

CHRISTINA I. REIHELD, Attorney at Law, for Appellant.

WILLIAM LANDERS, Attorney at Law, for Appellee.

RACHEL HOFFEE, Attorney at Law, for Appellee.

GLADENE HERSHBERGER, Guardian ad Litem.