[Cite as *In re G.L.S.*, 2018-Ohio-1606.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: G.L.S.

C.A. Nos.    28874
28893

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 16-09-000854

DECISION AND JOURNAL ENTRY

Dated: April 25, 2018

HENSAL, Judge.

{¶1} Appellants, T.F. ("Mother") and J.S. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother and Father are the biological parents of G.L.S., born September 29, 2016. The day that G.L.S. was born, CSB filed a complaint to allege that she was a dependent child because Mother and Father had a history with CSB pertaining to siblings of this child, which resulted in the involuntary termination of their parental rights. G.L.S. was later adjudicated dependent and placed in the temporary custody of CSB.

{¶3} The case involving the older siblings of G.L.S. began during September 2014. CSB opened an involuntary case with Mother's two oldest children, who are not Father's

biological children. At that time, Mother was also pregnant with Father's biological child, K.S. Mother's two children were removed from her custody because the younger child, then less than two years old, had sustained multiple injuries and bruises on the head, face, and back that were consistent with abuse. Father was later convicted of endangering children and felony domestic violence for causing the child's injuries.

{¶4} Mother's injured child was adjudicated abused, her older child was adjudicated dependent, and both were placed in the temporary custody of CSB. Shortly after birth, K.S. was removed from the custody of Mother and Father, adjudicated dependent, and placed in the temporary custody of CSB.

{¶5} Ultimately, the three older siblings of G.L.S. were placed in the permanent custody of CSB. Among other reasons, the trial court found that neither parent had substantially remedied their mental health problems or other conditions that caused the children to remain placed outside their custody. R.C. 2151.414(E)(1). The trial court's decision terminating parental rights to the older siblings was affirmed on appeal to this Court. *In re C.F.*, 9th Dist. Summit No. 28358, 2017-Ohio-375.

{¶6} In this case, the trial court placed G.L.S. in the temporary custody of CSB and adopted the case plan on December 13, 2016. CSB was concerned that Father could not control his violent temper and that Mother refused to recognize the risk that he posed to the child. In addition to demonstrating an ability to provide for the basic needs of G.L.S., the case plan required both parents to obtain mental health and substance abuse assessments and follow all treatment recommendations.

{¶7} Shortly after the trial court adopted the case plan, CSB moved to suspend Father's visitation because he had become angry and threatened to harm CSB staff members prior to a

visit, and had to be escorted from the visitation center by the police. The trial court issued an ex parte order to suspend Father's visitation immediately. The trial court scheduled a hearing on the issue, but a hearing was not held. According to the undisputed testimony of the caseworker, however, he told father after the first permanent custody hearing that his visits would be reinstated if he addressed his anger through counseling, but Father did not attend counseling.

{¶8} On February 9, 2017, CSB filed a motion for permanent custody of G.L.S. because, among other reasons, neither parent had been complying with the reunification requirements of the case plan. R.C. 2151.414(E)(1). That same day, CSB separately moved for an order to excuse it from making reasonable efforts to reunify G.L.S. with her parents. Revised Code Section 2151.419(A)(2)(e) provides that the trial court "shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home" if "[t]he parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child[.]" The trial court scheduled a permanent custody hearing and, although it also scheduled a separate hearing on the agency's motion for a reasonable efforts bypass, no separate hearing was held on the reasonable efforts bypass.

{¶9} The hearing on the first permanent custody motion was held during June 2017. CSB presented evidence that the parents had failed to comply with the reunification requirements of the case plan and also about the prior involuntary termination of parental rights pertaining to the older siblings of G.L.S. The parents did not dispute the prior termination of their parental rights. Instead, they focused their defense to the permanent custody motion on whether the agency had given them enough time to work the case plan, as CSB had moved for permanent

custody only two months after the case plan was adopted as an order of the court. At the end of the hearing, CSB asked the trial court to grant permanent custody and to grant its motion for a reasonable efforts bypass. Mother's counsel argued in opposition to both motions.

{¶10} Following the first permanent custody hearing, the trial court denied CSB's motion, emphasizing that the parents had not had "sufficient time to work the case plan and seek reunification" with G.L.S. The trial court further "admonished [the parents] of the importance of their compliance with the case plan as they have involuntarily lost custody of other children." Later in the order, however, the trial court stated that it granted CSB's motion for a reasonable efforts bypass.[1]

{¶11} On July 21, 2017, CSB again moved for permanent custody of G.L.S. Following a hearing held during October 2017, the trial court terminated parental rights and placed G.L.S. in the permanent custody of CSB. The parents separately appealed and their appeals were consolidated for purposes of argument and decision. Each raises three assignments of error, which will be consolidated and rearranged for ease of review.

II.

### FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT SUSPENDED FATHER'S VISITATION WITH THE CHILD WITHOUT CONDUCTING A HEARING ON THE MATTER, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION [AND] ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.

---

[1] The portion of the order that "granted" a reasonable efforts bypass was inconsistent with the trial court's denial of permanent custody and emphasis on the importance of reasonable reunification services in this case. Moreover, the agency continued to provide case plan services to the parents after the trial court issued the order.

**MOTHER'S ASSIGNMENT OF ERROR I**

THE TRIAL COURT VIOLATED R.C. 2151.419 AND MOTHER'S RIGHTS TO DUE PROCESS WHEN IT ISSUED A REASONABLE EFFORTS BYPASS WITHOUT NOTICE AS TO WHEN IT WOULD BE CONSIDERED, WITHOUT GIVING MOTHER AN OPPORTUNITY TO PRESENT A DEFENSE, AND WITHOUT ISSUING WRITTEN FINDINGS OF FACT SETTING FORTH ITS REASONS FOR ITS DETERMINATION.

**FATHER'S ASSIGNMENT OF ERROR II**

THE TRIAL COURT VIOLATED R.C. 2151.419 AND FATHER'S DUE PROCESS RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS WHEN IT ISSUED A REASONABLE EFFORTS BYPASS WITHOUT NOTICE AS TO WHEN THE HEARING WOULD BE [CONSIDERED], WITHOUT GIVING FATHER AN OPPORTUNITY TO PRESENT A [DEFENSE], AND WITHOUT [ISSUING] WRITTEN FINDINGS OF FACT AND CONCLUSIONS OF LAW SETTING FORTH ITS REASONING FOR THE DETERMINATION.

{¶12} This Court will address these assigned errors together because the parents failed to preserve these issues for appellate review. The parents argue that they were deprived of due process when the trial court issued two orders that predated the final permanent custody hearing: an order suspending Father's visitation with G.L.S. and the order granting CSB a reasonable efforts bypass. Father and Mother failed to raise these arguments before or during the final permanent custody hearing and, therefore, have forfeited all but plain error. *In re R.P.*, 9th Dist. Summit No. 28097, 2017-Ohio-276, ¶ 7. Neither parent has developed a plain error argument on appeal. *See id.* In fact, they have failed to demonstrate prejudice because they do not dispute that the suspension of Father's visits and the reasonable efforts bypass were warranted by the facts of this case. Although Mother suggested otherwise at oral argument, a prior termination of parental rights conclusively establishes grounds for a reasonable efforts bypass and Revised Code Section 2151.419(A)(2)(e) provides that the trial court "shall" excuse the agency from making reasonable efforts.

{¶13} Moreover, even if the trial court's order "granted" a reasonable efforts bypass, CSB continued to provide the parents with reunification services and the agency based its second motion, in part, on Section 2151.414(E)(1), which required clear and convincing evidence that the parents had failed to substantially remedy the conditions that had caused G.L.S. to remain placed outside their custody, "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents[.]"  At the second permanent custody hearing, CSB presented evidence about the parents' lack of case plan compliance and the parents again argued that they had not been given enough time to work on the case plan.  Because the parents have failed to demonstrate plain error, Father's first and second and Mother's first assignments of error are overruled.

### MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT
ALLOWED [CSB] TO PRESENT EVIDENCE THAT WAS SUBSEQUENT TO
THE DATE IT FILED FOR PERMANENT CUSTODY.

{¶14} Mother's second assignment of error is that the trial court committed reversible error by admitting evidence about facts and circumstances that arose after CSB moved for permanent custody.  She relies on established case law that the agency must allege permanent custody grounds that exist at the time it files its motion.  *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 24, quoting *In re K.G.*, 9th Dist. Wayne Nos. 03CA0066, 03CA0067, 03CA0068, 2004-Ohio-1421, ¶ 13.  This holding arose within the context of the "12 of 22" ground for permanent custody.  *See id.* at ¶ 19.  The "12 of 22" ground created a presumption of parental unfitness based on the passage of time that a child spends in temporary custody, so the legislature must have intended that parents be given a full 12 months to work toward reunification.  *Id.* at ¶ 22.  This Court recognized that permanent custody hearings sometimes are

not held until months after the permanent custody motion is filed, and emphasized that the agency should not be permitted to benefit from the delay at the expense of the family having a sufficient opportunity to work toward reunification. *In re K.G.* at ¶ 23.

{¶15} In this case, CSB did not allege the "12 of 22" ground, but alleged other factual grounds under the first prong of the permanent custody test, including that the parental rights of Mother and Father had been involuntarily terminated as to an older sibling or siblings of G.L.S. R.C. 2151.414(E)(11). No one disputes that those grounds existed at the time CSB moved for permanent custody and that the trial court did not consider any facts that occurred after the motion was filed to make that determination.

{¶16} In determining the child's best interest, the trial court did consider some evidence about facts and circumstances that occurred after CSB moved for permanent custody. Unlike factual first-prong permanent custody grounds that can be established at a finite point in time, the child's best interest is a fluid concept, as it involves the child's continually-changing need for appropriate care. *See In re J.A.*, 107 A.3d 799, 812 (Pa.Super.2015). In this case, CSB filed its motion for permanent custody several months before the final hearing was ultimately held. Mother cites no authority to support her positon that the trial court was precluded from considering facts and circumstances pertaining to the child's best interest that occurred during that several-month period. In fact, this Court has affirmed many permanent custody decisions that considered post-motion facts and circumstances to determine the child's best interest at the time of the hearing. *See, e.g.*, *In re S.A.-C.*, 9th Dist. Summit No. 28704, 2017-Ohio-9297; *In re S.M.*, 9th Dist. Wayne Nos. 16AP0045, 16AP0046, 16AP0047, 16AP0048, 16AP0049, 16AP0050, 2016-Ohio-7816; *In re L.P.*, 9th Dist. Summit No. 27792, 2015-Ohio-4164; *In re A.C.*, 9th Dist. Summit No. 27328, 2014-Ohio-4918. Because Mother has failed to demonstrate

that the trial court erred in considering any of the evidence presented at the hearing, her second assignment of error is overruled.

## MOTHER'S ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS AS THE [JUDGMENT] WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## FATHER'S ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT TERMINATED FATHER'S PARENTAL RIGHTS AS THE [JUDGMENT] WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} The parents' remaining assignments of error challenge the merits of the trial court's permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶18} The trial court found that CSB had satisfied the first prong of the permanent custody test for several alternative reasons, including that the parents had failed to substantially remedy the conditions that caused G.L.S. to be placed outside the home and that they had

previously involuntarily lost their parental rights to older siblings. *See* R.C. 2151.414(E)(1) and (E)(11). As long as one of those grounds was properly supported by clear and convincing evidence, the parents suffered no prejudice from any error in the trial court's alternative finding under Revised Code Section 2151.414(E). *See, e.g.*, *In re S.C.*, 9th Dist. Summit No. 27676, 2015-Ohio-2623, ¶ 30; *In re R.H.*, 9th Dist. Lorain Nos. 11CA010002, 11CA010003, 2011–Ohio–6749, ¶ 13–14. Mother and Father dispute whether CSB had established grounds under Section 2151.414(E)(1) but they do not dispute that their parental rights had been involuntarily terminated as to an older sibling or siblings of G.L.S. R.C. 2151.414(E)(11).

{¶19} As originally enacted, a prior termination of parental rights to a sibling of the child conclusively established the parent's unfitness under the first prong of the permanent custody test. *See* former R.C. 2151.414. As amended effective January 9, 2009, however, Section 2151.414(E)(11) allows a parent to rebut the presumption that they are unfit by presenting "clear and convincing evidence to prove that, notwithstanding the prior termination, [they] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." Notably, neither parent in this case presented any evidence that they could provide a legally secure placement for G.L.S.

{¶20} The parents challenge the trial court's best interest determination, but they focus their arguments almost exclusively on whether they were given sufficient time to work on the case plan. Although the parents' case plan compliance was relevant to the children's best interest, it was not dispositive. *See In re G.A.*, 9th Dist. Summit Nos. 28664, 28665, 2017-Ohio-8561, ¶ 13. When determining the child's best interest under Section 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the need for permanence in the child's

life, and whether any of the factors set forth in Section 2151.414(E)(7) to (11) apply to the facts of the case. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

**{¶21}** Mother and Father do not dispute any of the trial court's factual findings on the best interest factors. Since the child's birth, their interaction with G.L.S. had been limited to closely-supervised visitation because they had not complied with the case plan. Father's visits were suspended shortly after the case plan was adopted, but the caseworker had informed him after the first permanent custody hearing that visits would be reinstated after he began court-ordered counseling. At the time of the hearing, seven months after the suspension of his visits, Father had not yet started counseling. Mother had the opportunity to meet regularly with her infant child, yet she missed more visits than she attended.

**{¶22}** G.L.S. was placed in a foster home with two of her older siblings shortly after her birth. All of her needs were being met and she was flourishing in the only home that she had ever known. G.L.S. had become closely bonded to the foster parents and her older siblings. By the time of the hearing, the foster parents had adopted the older siblings and were interested in adopting G.L.S.

**{¶23}** G.L.S. was too young to express her wishes, so the guardian ad litem spoke on her behalf. She opined that permanent custody was in the child's best interest because neither parent had seriously attempted to remedy their substance abuse or mental health problems or to develop a relationship with G.L.S.

**{¶24}** By the time of the final hearing, G.L.S. had spent more than one year in the home of her foster parents. During that time, her parents had done little to address their parenting problems. CSB had been unable to find any suitable relatives to provide the child with a stable home and the parents were not prepared to do so at that time or within the foreseeable future.

{¶25} The trial court was also required to consider that Mother's parental rights had been involuntarily terminated to three older siblings of G.L.S. and Father's parental rights were involuntarily terminated as to the one sibling who was his biological child. R.C. 2151.414(D)(1)(e); R.C 2151.414(E)(11). The trial court heard considerable evidence that the parents continued to suffer from the same parenting problems that caused them to lose custody of those children. As noted already, Revised Code Section 2151.414(E)(11) provided the parents with an opportunity to rebut this statutory presumption of parental unfitness, but neither parent presented any evidence at the hearing to defend against the agency's motion.

{¶26} The parents have failed to demonstrate that the trial court's permanent custody judgment was not supported by clear and convincing evidence. Father's and Mother's third assignments of error are overruled.

### III.

{¶27} The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ADAM VANHO, Attorney at Law, for Appellant.

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

HOLLY FARAH, Guardian ad Litem.