[Cite as *In re A.F.*, 2018-Ohio-4813.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: A.F.

C.A. Nos. 29117
            29118

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN-17-07-0536

DECISION AND JOURNAL ENTRY

Dated: December 5, 2018

HENSAL, Judge.

{¶1} Appellants, C.F. ("Mother") and S.F. ("Father"), appeal from a judgment of Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother and Father are the biological parents of A.F., born July 12, 2017. Their two older children were removed from their custody and later involuntarily placed in the permanent custody of two different children services agencies before A.F. was born. Because the parents continued to exhibit similar parenting problems after the birth of A.F, the child was removed from their custody when he was five days old.

**{¶3}** CSB moved for permanent custody of A.F. shortly after he was adjudicated a dependent child. The agency alleged grounds under R.C. 2151.414(E), including that their parental rights to two older siblings had been involuntarily terminated. R.C. 2151.414(E)(11).

**{¶4}** Following a hearing on the motion, the trial court terminated parental rights and placed A.F. in the permanent custody of CSB. Mother and Father separately appealed and their appeals were later consolidated. Their assignments of error will be addressed together because they are closely related.

II.

**MOTHER'S ASSIGNMENT OF ERROR**

**THE COURT FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**FATHER'S ASSIGNMENT OF ERROR**

**THE GRANT OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE REUNIFICATION COULD HAVE OCCURRED WITHIN A REASONABLE TIME.**

**{¶5}** Mother and Father argue that the trial court's permanent custody decision was not supported by the evidence presented at the hearing. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the

agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶6} The trial court found that CSB satisfied the first prong of the permanent custody test for reasons including that the parents' rights had been involuntarily terminated with respect to two siblings of the child. *See* R.C. 2151.414(E)(11). The parents do not challenge any of the trial court's first prong findings.

{¶7} Instead, both parents challenge the trial court's finding that permanent custody was in the best interest of A.F. When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the need for permanence in the child's life, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.,* 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶8} The parents' interaction with A.F. throughout this case was limited to closely supervised visits. Mother attended approximately 60 percent of the scheduled visits, but Father attended only about 20 percent of the visits that were available to him. Father told the caseworker that he missed visits because he had to work, but the caseworker testified that Father continued to miss visits even after she changed the visitation times to accommodate his work schedule.

{¶9} Witnesses also expressed concern that, when the parents did visit, they did not engage in much cuddling or face-to-face interaction with A.F. but tended to keep him in his stroller. The guardian ad litem testified that he had observed only a "marginal" bond between

Mother and A.F. Because Father had missed so many visits with the child, the guardian ad litem had seen him with A.F. only once during the eight months before the hearing.

{¶10} The parents' visits were always closely supervised because of the agency's concern about their ability to safely meet the basic needs of A.F. Visitation supervisors testified that they needed to redirect the parents' behavior during every visit with A.F. Mother was resistant to redirection and often emphasized that this is her third child, even though none of her children had ever resided with her for more than a few days.

{¶11} Several witnesses testified that the parents did not demonstrate the ability to appropriately hold, feed, or diaper A.F. For example, the parents repeatedly required redirection while holding A.F. to support his head and/or avoid blocking his nose and mouth so he could breathe. Mother walked away from A.F. while changing his diaper on an elevated surface and, another time, failed to strap him into his stroller. The parents could not prepare A.F.'s bottle without help from those supervising the visits and Mother tended to over feed him. Diapering and changing A.F.'s clothes continued to be a struggle for Mother throughout this case. Both parents, particularly Mother, lacked the ability to soothe A.F. when he became fussy. Mother often responded by trying to feed him more.

{¶12} Because A.F. was too young to express his wishes, the guardian ad litem spoke on his behalf. The guardian opined that permanent custody was in the best interest of the child because the parents do not have the ability to appropriately care for him, even in a supervised setting.

{¶13} The custodial history of A.F. had been spent primarily in foster care. A.F. lived with his parents for only a couple of days after birth. The remainder of his short life had been spent in the temporary custody of CSB. The child was in need of a legally secure permanent

placement, his parents were not able to appropriately care for him, and CSB had been unable to find any suitable relatives who were willing to do so. A.F. had been placed in the same foster home throughout this case and had become bonded to the entire family. All of his needs were being met in that home and the foster parents expressed interest in adopting him if the agency received permanent custody.

{¶14} The trial court was also required to consider the fact that the parents' rights to A.F.'s older siblings had been involuntarily terminated and they failed to present evidence to demonstrate that, despite the prior terminations, they could provide an appropriate home for A.F. *See* R.C. 2151.414(D)(1)(e); R.C. 2151.414(E)(11). The parents' two older children were also removed from their custody shortly after each of them was born because the parents were unable to appropriately care for them due to their untreated mental health problems and significant intellectual disabilities. One CSB employee, who had also worked with the parents during this case and the 2013 case involving one of the older siblings, testified that she had observed no improvement in their parenting ability over the past several years. The parents presented no evidence on their own behalf to demonstrate that their parenting ability had improved. *See In re G.L.S.*, 9th Dist. Summit Nos. 28874, 28893, 2018-Ohio-1606, ¶ 19.

{¶15} Given the undisputed evidence before the trial court, the parents have failed to demonstrate that the trial court erred in concluding that permanent custody to CSB was in the best interest of A.F. The parents' assignments of error are overruled.

III.

{¶16} The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

6

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

 

JENNIFER HENSAL
FOR THE COURT

SCHAFER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

AVIVA L. WILCHER, Attorney at Law, for Appellant.

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

CHRISTINA BOLLMAN, Guardian ad Litem.